UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM KOHL,<br><br>        Plaintiff,<br><br>    v.<br><br>DANNY DAVIS, et al.,<br><br>        Defendants. | No. 20 CV 1940<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Adam Kohl worked as a juvenile counselor for the 19th Judicial Circuit Court of Lake County. Kohl had a relationship and a child with a coworker, then later married a different coworker. Kohl alleges that his ex-girlfriend lied about him in court and improperly sent the police to his home to check on their son. Kohl reported her behavior to the court's managers. In response, Kohl alleges that the court demoted him, suspended him, and subjected him to low pay raises, while his ex-girlfriend suffered no consequences. He sues the chief judge and his supervisors for First Amendment retaliation and violations of the Equal Protection and Due Process Clauses, and Lake County for indemnification. Lake County and the individual defendants move separately to dismiss for failure to state a claim. For the reasons discussed below, the motions are granted in part, denied in part.

### I.    Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The complaint must

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing a motion to dismiss, I construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020).

## II. Background

Kohl worked as a juvenile counselor for the 19th Judicial Circuit Court of Lake County for 20 years. [1] ¶¶ 1–2, 15, 34.[1] In June 2017, he was promoted to unit manager. [1] ¶ 35. Defendant Jay Ukena was the chief judge of the court; defendant Danny Davis was the executive director of the Administrative Office, or court administrator; and defendant James Edwards was director of the Juvenile Division. [1] ¶¶ 19, 22, 25.

In 2007, Kohl dated Nubia Garza Mackowski, who worked in the court's Adult Probation Division. [1] ¶¶ 36–37. Kohl and Mackowski had a son together. [1] ¶ 37. Their relationship ended, and Kohl married another court employee. [1] ¶ 39. Kohl and Mackowski litigated child-custody and other disputes in the 19th Judicial Circuit Court, and Mackowski lied about Kohl to the court. [1] ¶¶ 40–41.[2] In July 2018, Mackowski used her work badge to prompt the Waukegan Police Department to

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. Facts are taken from the complaint. [1].

[2] The complaint alleges that Mackowski made false reports about Kohl "to the 19th Judicial Circuit Court." [1] ¶ 41. It's unclear whether Kohl means that Mackowski made false reports to the court as a litigant in their child-custody dispute, or whether she reported Kohl to their supervisors in her capacity as an employee, but I infer it's the former.

2

conduct a wellness check on her son at Kohl's home. [1] ¶¶ 41, 43. Kohl reported to Davis and the court's human resources department that Mackowski was harassing him and his wife, making false accusations about him, and had contrived a wellness check to harass him. [1] ¶¶ 42–43. Defendants took no action to protect Kohl. [1] ¶ 45.

A few months later, Kohl attended a work conference in Champaign. [1] ¶ 47. A week after that, Kohl's supervisors told him that the HR director had investigated him for his behavior at the conference, but no investigation was ever conducted. [1] ¶¶ 48–49. A month later, Davis and Ukena signed an official memorandum stating that Kohl had violated the court's rules and policies during an incident in July 2018, but the memorandum didn't describe any specific misconduct. [1] ¶ 50. Kohl's suspension lasted five to eight days, and he was demoted from his position as unit manager. [1] ¶ 51. In 2019, court employees were given pay raises correlated to their annual performance reviews. [1] ¶ 54. Kohl should have gotten a 2.7% pay raise, but instead only got a 1.7% raise. [1] ¶ 55. Mackowski was not subject to any discipline based on her harassment and misconduct, as reported by Kohl. [1] ¶ 53.

### III. Analysis

Kohl brings three claims under 42 U.S.C. § 1983. He alleges that Davis and Edwards, in their individual capacities, and Ukena, in both his official and individual capacities, retaliated against Kohl in violation of the First Amendment, discriminated against him on the basis of his sex in violation of the Equal Protection Clause, and deprived him of substantive due process. Kohl also sues Lake County as

an indemnifier. Lake County and the individual defendants move separately to dismiss for failure to state a claim under Federal Civil Rule of Procedure 12(b)(6).

   A. *Official Capacity Claim*

Kohl sues Ukena, the former chief judge, in both his official and individual capacities.[3] The official-capacity claim for damages is dismissed. Section 1983 makes it unlawful for any "person" acting under color of state law to violate a plaintiff's federal constitutional rights. A state is not a "person." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Illinois constitution creates the circuit courts. Ill. Const. art. VI, §§ 7, 18(b). The state, not any county, is the "sole employer of all court employees." *Warren v. Stone*, 958 F.2d 1419, 1422 (7th Cir. 1992) (quoting *Orenic v. State Labor Relations Bd.*, 127 Ill.2d 453 (1989)); *see also Robinson v. Sappington*, 351 F.3d 317, 332 n.9 (7th Cir. 2003) (circuit court judges in Illinois are state employees, not county employees). A suit against a state employee in his official capacity is a suit against the office itself—here, the state of Illinois—so Ukena in his official capacity is not a person who can be sued under § 1983. *Id.*; *Kolton v. Frerichs*, 869 F.3d 532, 535 (7th Cir. 2017).

This statutory bar under § 1983 is "distinct" from the Eleventh Amendment immunity raised by the parties, and courts must address the "statutory defense before the constitutional" to avoid unnecessary constitutional decisionmaking.

---

[3] Diane Winter is the current chief judge of the 19th Judicial Circuit Court of Lake County, and should be the defendant for the official-capacity claim. Fed. R. Civ. P. 25(d). Ukena is a defendant for the claims against him in his individual capacity. For ease of reading, I refer to Ukena when discussing both the official and individual-capacity claims.

*Thomas v. Illinois*, 697 F.3d 612, 613–14 (7th Cir. 2012). Since Kohl's official-capacity claim fails on statutory grounds, I need not reach the issue of sovereign immunity. Nevertheless, the Eleventh Amendment bars claims against states for damages unless the state has waived its immunity or Congress has overridden that immunity. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007). Kohl doesn't claim that either exception applies here. *See Thomas*, 697 F.3d at 613 (Congress did not abrogate states' sovereign immunity under § 1983). The Eleventh Amendment bars an official-capacity damages claim against the chief judge.[4] *See Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017) ("[L]awsuits brought against employees in their official capacity 'represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985))).

A plaintiff can, however, sue a state official for prospective relief under the *Ex parte Young* doctrine. A state officer "acts independently when enforcing an unconstitutional law." *Kolton*, 869 F.3d at 536; *see also McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013) (when a state official violates the Constitution, the official is stripped of his or her official character and thus any immunity defense). So a suit for prospective relief is against the individual—a suable person under § 1983—and the Eleventh Amendment doesn't bar the claim. *Will*, 491

---

[4] Sovereign immunity is an affirmative defense. *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016). Although a plaintiff normally doesn't need to plead around affirmative defenses, the complaint here establishes all the necessary elements of the defense, the parties fully briefed the sovereign-immunity issue, and Kohl doesn't object to considering it at the pleading stage. So resolution is appropriate.

U.S. at 71 n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983."); *Nanda v. Bd. of Trs. of Univ. of Ill.*, 303 F.3d 817, 832 (7th Cir. 2002) ("[U]nder § 1983, a suit against state officials in their official capacity limited to injunctive relief is not barred by the Eleventh Amendment.").

*Ex parte Young* authorizes a suit against a state official if a plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *McDonough*, 722 F.3d at 1051 (quoting *Verizon Md. Inc. v. Public Svc. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Kohl hasn't alleged an ongoing violation of federal law. The crux of his lawsuit is that he complained about Mackowski to their supervisors and was pretextually demoted and suspended in response. He served this suspension in 2018. He doesn't allege that he continues to be retaliated against or mistreated at work, that any disciplinary proceedings are upcoming or pending, or that he is about to try for another promotion to unit manager. He continues to work in his demoted position, but the demotion itself was a one-time event. Ongoing harm flowing from a past violation is not synonymous with an ongoing violation. Likewise, that Kohl's child-custody litigation with Mackowski is pending is irrelevant; the existence of that litigation isn't a deprivation of Kohl's constitutional rights.

True, Kohl asks for (among other things) a court order directing defendants "to adopt and implement policies, procedures, and practices" to eliminate the constitutional deprivations he allegedly suffered, as well as appointment of an independent monitor to oversee implementation of those policies. Those are

prospective measures, but merely asking for prospective relief is not enough. Kohl must also establish that a violation of federal law is ongoing, and he hasn't done so. *See, e.g.*, *Sonnleitner v. York*, 304 F.3d 704, 717–18 (7th Cir. 2002) (although plaintiff's request for reinstatement was prospective, allegations referred to a "past rather than an ongoing violation of federal law"); *Flores v. Norwood*, 2017 WL 34641, at *3 (N.D. Ill. Jan. 4, 2017) (plaintiff alleging suspension in violation of Equal Protection Clause "already served th[e] suspension" and did not allege that "disciplinary proceedings related to the suspension [we]re ongoing or that she [wa]s party to any other disciplinary proceedings").

Finally, to the extent Kohl asks for injunctive relief from the individual defendants, that relief is unavailable under § 1983. *Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) ("[I]njunctive relief against a state official may be recovered only in an official capacity suit."); *see also Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (similar). So any claim for injunctive relief from the individual defendants is dismissed.[5]

---

[5] In the individual defendants' reply brief, they argue that Kohl can't obtain an injunction against Ukena due to a 1996 amendment to § 1983, which bars injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity" unless a declaratory decree was violated or declaratory relief was unavailable. 42 U.S.C. § 1983; *see Smith v. City of Hammond*, 388 F.3d 304, 307 (7th Cir. 2004). Arguments raised for the first time in a reply brief are waived. *Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009). In any event, this provision of § 1983 doesn't preclude Kohl from seeking injunctive relief. Kohl sues Ukena for acts he took as Kohl's employer, not acts that he took in his judicial capacity. *See Forrester v. White*, 484 U.S. 219, 229 (1988) (acts such as "supervising court employees" are administrative, not "judicial or adjudicative").

### B. Vicarious or Supervisory Liability

Kohl's complaint repeatedly refers to the court's patterns, practices, and policies. But Kohl doesn't name the court itself as a defendant, and explicitly disclaims any *Monell* theory in his response brief. [27] at 7. Likewise, he acknowledges that there is no respondeat superior liability under § 1983. *See Lennon v. City of Carmel*, 865 F.3d 503, 507–08 (7th Cir. 2017) ("[T]here is no vicarious liability in a suit under section 1983.").

Kohl names three court supervisors as individual defendants, but a defendant must be "personally responsible" for the alleged deprivation of the plaintiff's constitutional rights to be liable under § 1983. *Id.*; *see Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). A plaintiff can fulfill this requirement by alleging that the defendant directed the violation or it occurred with his knowledge or consent. *Mitchell*, 895 F.3d at 498.

Kohl has adequately alleged that Ukena and Davis were personally involved in the violations—he complained to Davis about Mackowski, and Davis and Ukena signed his suspension letter, making it plausible that they both personally participated in handing down the allegedly unlawful discipline. But Kohl doesn't implicate Edwards directly in any alleged misconduct. He doesn't plead that he ever spoke to Edwards, that Edwards knew about Kohl's complaints, or that Edwards had any say in or knowledge of the disciplinary consequences Kohl received. To the contrary, Edwards likely had little authority over Mackowski—Edwards headed the juvenile division, while Mackowski worked in probation—so Kohl appears to have

8

gone over Edwards to Davis, the court administrator. And simply identifying Edwards as a "policymaker" is insufficient to plausibly allege that Edwards was personally involved in a constitutional violation. All claims against Edwards are dismissed. *See Gill v. City of Milwaukee*, 850 F.3d 335, 343–44 (7th Cir. 2017) (dismissing supervisor where complaint didn't plausibly allege he "knew about or was personally involved in the specific conduct"); *Lennon*, 865 F.3d at 507 (same).

### C. Failure to State a Claim

#### 1. First Amendment Retaliation

To state a § 1983 claim for retaliation under the First Amendment, a public employee must prove that his speech is constitutionally protected. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).[6] The employee must establish that he spoke "as a citizen," and that he spoke "on a matter of public concern." *Id.*

A public employee speaks in his capacity as an employee, not a citizen, when he speaks "pursuant to his official duties." *Lett v. City of Chicago*, 946 F.3d 398, 400 (7th Cir. 2020) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Courts consider whether the speech "owes its existence to a public employee's professional responsibilities." *Id.* (quoting *Garcetti*, 547 U.S. at 421). If so, the employee is speaking as an employee, and the speech is not protected. *Id.* Put differently, the First Amendment does not empower public employees to "constitutionalize the employee grievance." *Id.* (quoting *Garcetti*, 547 U.S. at 420).

---

[6] Sovereign immunity doesn't preclude the claim against Ukena in his individual capacity. *Lewis*, 137 S. Ct. at 1291.

A topic of public concern is one that's of "legitimate news interest" or on "a subject of general interest and of value and concern to the public." *Kubiak*, 810 F.3d at 482 (quoting *Meade v. Moraine Vall. Cmty Coll.*, 770 F.3d 680, 684 (7th Cir. 2014)). Content, form, and context inform whether an employee's speech addressed a matter of public concern. *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)). Courts must ascertain the "overall objective or point of the speech," *id.*, and distinguish between speech meant to "bring wrongdoing to light" and speech furthering "some purely private interest." *Id.* at 483 (quoting *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013)).

Kohl hasn't plausibly alleged that he was speaking as a public citizen. He complained about Mackowski, his coworker, at work, to the HR department and the court administrator. The substance of the complaint was tied to Mackowski's work-related conduct—Kohl complained that she had abused her position when she wielded her official badge to initiate a wellness check at his home, and that she had lied to the court (their employer) about him. True, the wellness check allegedly occurred outside of work hours and at Kohl's home, rather than at work. But Kohl where complained to his supervisors, about a coworker, related to the coworker's abuse of her official duties, he was speaking pursuant to his professional responsibilities. *See, e.g.*, *Kubiak*, 810 F.3d at 482 (employee's speech was "intimately connected with her professional duties" where she complained about a coworker to her supervisor).

Likewise, Kohl hasn't adequately established that he spoke on a matter of public concern. The content, form, and context of Kohl's complaint indicate that he

10

spoke purely to further a private interest. For example, as to form, a complaint made "up the chain of command" suggests that the complaint's objective is to "air a personal grievance," not to address a matter of public concern. *Id.* at 483. Kohl turned to a supervisor and human resources, rather than pursuing an internal-affairs complaint, as a private citizen would. And the content of the speech concerned a private dispute with his son's mother. Nothing about his report was newsworthy or implicated a matter of general public concern. The speaker's motivation also informs the analysis. *Id.* at 484. Kohl's motivations were to trigger discipline for Mackowski and protect himself from further harassment—purely private interests—not to bring some systemic or widespread wrongdoing to light. Kohl's insistence that he was revealing a "pattern of misconduct" is inconsistent with the complaint. As alleged, Kohl sought punishment of one person for two acts (conducting a wellness check on his son and lying about him to the court). Kohl doesn't allege that Mackowski improperly used her badge another time, chronically lied in court, or spread misinformation about another employee or a member of the public. The only person affected by Mackowski's conduct was Kohl. Absent some broader impact, the speech didn't concern a matter of public interest. *See, e.g., id.* (employee's internal complaint about her coworker was to "further her personal interest in remedying an employee grievance," not to address a matter of public concern).

Kohl's First Amendment retaliation claim is dismissed.

11

### 2. Equal Protection

A plaintiff alleging sex discrimination under the Equal Protection Clause must show that the defendants acted with a "nefarious discriminatory purpose" and discriminated against him "based on his membership in a definable class." *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). Generally, a complaint alleging sex discrimination need only plead that an employer instituted an adverse employment action against the plaintiff on the basis of sex, an "undemanding" standard. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *Huri v. Office of the Chief Judge*, 804 F.3d 826, 833 (7th Cir. 2015) (employment discrimination complaint need only plead the type of discrimination, by whom, and when it occurred). The same standards govern sex-discrimination claims under Title VII and § 1983. *Word*, 946 F.3d at 397 n.4; *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885–86 (7th Cir. 2012).

Kohl has satisfied the minimal pleading standards to allege employment discrimination. He has identified adverse actions—he was demoted and suspended—and identified Davis and Ukena as the people who allegedly discriminated against him. He pleads that they did so because he is male. At this stage of the case, Kohl doesn't need to identify similarly situated comparators or allege any background circumstances to establish a reverse-discrimination claim, as he will need to do at the summary-judgment stage. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (plaintiff alleging sex discrimination need not identify comparators at the pleading stage); *Farr v. St. Francis Hosp. & Health Ctrs.*, 570 F.3d 829, 833 (7th Cir.

2009) (describing "modified test" at summary judgment in reverse sex-discrimination cases). Defendants are on notice of Kohl's claim—they demoted and suspended him on the basis of sex—and nothing more is required for now.

Davis and Ukena's motion to dismiss count II for failure to state a claim is denied.

### 3. Substantive Due Process

Kohl has failed to state a due-process claim. "When a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process must be the guide for analyzing these claims." *Koutnik v. Brown*, 456 F.3d 777, 781 n.2 (7th Cir. 2006) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see also Schroeder v. Drankiewicz*, 519 Fed. App'x 947, 950 n.1 (7th Cir. 2013) ("Where a putative due-process claim overlaps with a claim rooted in a more explicit constitutional provision, we analyze the claim under the more specific provision.").

Kohl alleges that defendants' conduct violated the First Amendment and the Equal Protection Clause, and there's no meaningful difference in the unconstitutional behavior he alleges in counts I and II and the due-process claim. So the more specific constitutional provisions, not substantive due process, govern his claims. *See Koutnik*, 456 F.3d at 781 (district court properly dismissed substantive due-process claim and analyzed it under First Amendment); *Eby-Brown Co. v. Wis. Dep't of Agric.*, 295 F.3d 749, 753–54 (7th Cir. 2002) (where plaintiff brought due-process and equal-

13

protection claims, due-process arguments were "more properly considered claims under the equal protection clause alone"). Kohl's due-process claim is dismissed.

I address the parties' due-process arguments in the interest of completeness. To state a claim for a substantive due-process violation, a plaintiff must allege that the government violated a "fundamental right or liberty." *Campos v. Cook Cty.*, 932 F.3d 972, 975 (7th Cir. 2019); *Khan v. Bland*, 630 F.3d 519, 535–36 (7th Cir. 2010). The plaintiff must show that the violation was "arbitrary and irrational." *Campos*, 932 F.3d at 975. Substantive due process protects against "only the most egregious and outrageous government action," *id.*, so the abuse of government power must be "so arbitrary and oppressive that it shocks the conscience." *Catinella v. Cty. of Cook*, 881 F.3d 514, 518–19 (7th Cir. 2018).

Kohl's theory appears to be that defendants interfered with his fundamental rights to marital and familial privacy. [1] ¶¶ 98–99. In his brief, he posits that Ukena, Davis, and Edwards used their government power to interfere in his custody dispute. [27] at 16.[7] The rights to marry, to have children, and to marital privacy are fundamental. *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). But Kohl doesn't plausibly allege that defendants violated those rights. There's no allegation that any defendant interceded in Kohl and Mackowski's child-custody dispute in any way. At

---

[7] Kohl doesn't argue that defendants violated any work-related fundamental rights. Employment-related rights are not fundamental, so a public employee can't state a substantive due-process claim unless he also alleges that the defendants "violated some other constitutional right or that state remedies were inadequate." *Campos*, 932 F.3d at 975 (quoting *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010)).

14

best, defendants failed to discipline Mackowski for measures she allegedly took to gain the upper hand over Kohl in that litigation. But looking the other way is far from intentional interference. And there's no allegation that Kohl's demotion or suspension had some impact on the outcome of the child-custody dispute. Kohl hasn't alleged that defendants violated any fundamental right, so his due-process claim fails for that reason too. *See, e.g.*, *Khan*, 630 F.3d at 535 (plaintiff's failure to establish a violation of a property or liberty interest was fatal to his due-process claim).

At a more general level, Kohl hasn't alleged outrageous or conscience-shocking conduct. Drawing all inferences in Kohl's favor, defendants refused to address Mackowski's misconduct and punished Kohl for complaining about it, either due to favoritism for Mackowski or a general preference for women. That conduct falls well short of outrageous government misconduct covered by the Due Process Clause, typically reserved for acts of law enforcement like forcibly pumping someone's stomach or eliciting a confession at gunpoint. *See Renneke v. Florence Cty.*, 594 Fed. App'x 878, 880–81 (7th Cir. 2014) (collecting cases).

*D. Indemnification*

Kohl sues Lake County solely as an indemnitor, while Lake County insists that the state is the proper indemnitor. The state constitution specifies that clerks and "other non-judicial officers of the Circuit Courts" are part of the judiciary. Ill. Const. art. VI, §§ 7, 18(b). The state employs all court employees. *Warren*, 958 F.2d at 1422; *Baker v. DuPage Cty.*, 703 F.Supp. 735, 737 (N.D. Ill. 1989) (circuit court administrator was a nonjudicial officer of the circuit court, not a county employee).

15

The State Employee Indemnification Act, 5 ILCS § 350, describes when the state must indemnify its employees, including judges. *Id.* § 350/2(c). *See generally McFatridge v. Madigan*, 2013 IL 113676, ¶¶ 18–27 (describing state's indemnification obligations). Kohl doesn't dispute that defendants are state employees, but argues that Lake County is a proper indemnitor under the Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS § 10. But that statute applies to "local public entities," such as counties, and does not apply to the state as an employer. *Id.* §§ 10/9-102, 10/1-206.

In any event, only claims against Davis and Ukena in their individual capacities remain. An indemnitor is not a necessary party to a lawsuit when defendants are sued in their individual capacities. *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 636–37 (7th Cir. 2009). So Lake County is dismissed as a defendant, and Kohl's request to join the state as a necessary party is denied.

*E. Leave to Amend*

Leave to amend should typically be freely given after dismissal of an initial complaint, unless amendment would be futile. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018). Kohl requests leave to amend, but doesn't specify what he would add to an amended complaint. In any event, it's not inconceivable that Kohl could amend his complaint to state a First Amendment claim or plead Edwards's personal involvement in the First Amendment or equal-protection context. So count I, and count II as to Edwards, are dismissed without prejudice.

16

All official-capacity claims against Ukena are dismissed with prejudice. The statute unequivocally bars a claim for damages, and Kohl offers no reason to think he could adequately allege an ongoing constitutional violation in an amended complaint. Likewise, Kohl's due-process claim is dismissed with prejudice. There's nothing that Kohl can say in an amended complaint to circumvent the *Albright* rule. Finally, Lake County is dismissed with prejudice. There is no basis to include Lake County as an indemnifier of these state employees.

**IV. Conclusion**

Lake County's motion to dismiss [18] is granted. Lake County is dismissed with prejudice. The individual defendants' motion to dismiss [19] is granted in part, denied in part. All claims against Ukena in his official capacity are dismissed with prejudice. Count III is dismissed with prejudice. Count I is dismissed without prejudice for failure to state a claim. Count II is dismissed as to Edwards without prejudice, but may proceed as to Ukena and Davis in their individual capacities. Defendants Ukena and Davis have until March 3, 2021, to answer the complaint. The parties shall file a status report on March 3, 2021, with a proposed discovery schedule. The court will set a deadline for any requests to amend the pleadings when it sets the discovery schedule.

ENTER:

Date:   February 10, 2021

_____
Manish S. Shah
U.S. District Judge