IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADAM KOHL, <br><br> Plaintiff, <br><br> v. <br><br> DANNY DAVIS, in his individual capacity, and JAY UKENA, in his individual capacity, <br><br> Defendants. | Case No. 20 C 1940 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Adam Kohl brought this action under 42 U.S.C. § 1983 asserting constitutional violations arising from a workplace dispute.[1] Defendants Danny Davis ("Davis") and Jay Ukena ("Ukena") moved for summary judgment on Plaintiff's remaining claim of sex discrimination (Dkt. 54). For the reasons discussed below, summary judgment will be granted in favor of Defendants.

**BACKGROUND**

**A.  Factual History**

Plaintiff (male) was hired by the 19th Circuit Judicial Court ("Circuit Court") as a juvenile counselor in the Juvenile Probation Division in July 1999. (Dkt. 73 at ¶¶ 3, 20).[2] Throughout the course of his employment with the Circuit Court, Plaintiff received various promotions, first to

---

[1] The Court previously dismissed all claims in the complaint (Dkt. 1) against Defendant Lake County with prejudice, against Defendant Ukena in his official capacity with prejudice, and against Defendant James Edwards without prejudice. (Dkt. 32).

[2] The relevant facts are gathered from the parties' respective Local Rule 56.1 statements and are undisputed unless otherwise noted. The Court refers to Plaintiff's Response to Defendants' Rule 56.1 Statement of Uncontested Material Facts in Support of Their Motion for Summary Judgment as "Dkt. 73" and Defendants' Answers to Plaintiff's Local Rule 56.1(b)(3) Statement of Additional Facts as "Dkt. 91." Page numbers in citations are the page number on the CM/ECF header of the filing, not the page number at the bottom of the page.

senior juvenile counselor in October 2001, then to principal juvenile counselor in August 2007, and finally to unit manager in July 2017. (*Id.* at ¶ 21).

Plaintiff is an at-will employee governed by the employee handbook, which Plaintiff acknowledges he has received and can access online. (*Id.* at ¶¶ 3, 22). Circuit Court employees must comply with the Rules of Conduct outlined in the handbook. (*Id.* at ¶ 11). Disregarding or failing to comply with expected standards of conduct could lead to disciplinary action, up to and including termination. (*Id.*). Refusal to comply with the reasonable order of an authorized supervisor and disrespectful or discourteous conduct to a supervisor, fellow employee, or member of the public are provided as examples of unacceptable behavior. (*Id.* at ¶ 12). Furthermore, the handbook identifies the following employee standards: showing respect for all employees and their property; not engaging in, nor allowing, any form of discrimination, including harassment against any employee, the public, or the clientele of the Circuit Court, maintaining courteous dealings with the public, all employees, and the clientele of the Circuit Court; and exercising common sense and good judgment. (*Id.* at ¶ 13).

The Circuit Court also has an Ethics Policy that requires employees to:

- demonstrate respect, courtesy, patience, and responsiveness toward all persons with whom the employee deals in an official capacity, including the general public (*Id.* at ¶ 14);

- refrain from engaging in any activity that would call into question the propriety of the employee's conduct in carrying out the duties of the office or cast doubt upon the integrity and impartiality of the legal system (*Id.* at ¶ 15); and

2

- refrain from making any negative or offensive comments, jokes, or suggestions about another employee which may perceived as harassing or demeaning and from any conduct which may be perceived as harassing. (*Id.* at ¶ 16).

When an employee receives a report of harassment, the report must be handled with due diligence. (*Id.*).

Plaintiff has a child with Nubia Mackowski (female), a Circuit Court employee who works as a principal probation officer in the Adult Probation Division. (*Id.* at ¶¶ 23, 52). The Juvenile and Adult Probation Divisions are part of the Circuit Court but have different reporting structures. (*Id.* at ¶¶ 6, 8-9). Plaintiff and Mackowski have a contentious relationship; the two have been engaged in litigation before the Circuit Court for years over custody of their child. (*Id.* at ¶ 23). In 2010, both directors of the Adult and Juvenile Probation Departments received a memorandum about Plaintiff and Mackowski's relationship, their ongoing custody battle, and the impact on the Circuit Court. (*Id.* at ¶ 24; Dkt. 91 at ¶ 108). According to the memorandum, both Plaintiff and Mackowski had worn their Circuit Court-issued identification into the courtroom during the custody proceedings, which violated Circuit Court policy. (Dkt. 91 at ¶ 108). Their directors were thus instructed to remind them of the policies by which they must abide and that failure to do so may result in discipline up to and including termination. (Dkt. 73-26). Similar memoranda were circulated again in 2011 to both Plaintiff and Mackowski about the impact of their child custody case on the Circuit Court and reminding them that further incidents could lead to discipline up to and including termination. (Dkt. 73 at ¶ 25; Dkt. 91 at ¶ 109).

In 2014, Plaintiff married a probation officer (female) who worked in the Juvenile Probation Division. (Dkt. 73 at ¶ 26). In 2017, Defendant Davis (male) became Executive Director for the Circuit Court; he served in this role until September 2019. (*Id.* at ¶ 4). As Executive

3

Director, Davis reported to the Chief Judge and supervised, among others, Rose Gray (female), who oversaw Adult Probation officers, and Mary Stevens (female), who served as the Director of Administration. (Dkt. 91 at ¶ 59). In January 2018, Defendant Ukena (male) assumed the role of Chief Judge of the Circuit Court, a position he held until his retirement in January 2020. (Dkt. 73 at ¶ 5).

On occasion, Plaintiff emailed superiors about Mackowski and their child custody litigation. For example, Plaintiff emailed Davis in September 2017, and claimed that Mackowski was seeking frivolous orders of protection. (Dkt. 91 at ¶ 106). Davis acknowledged receipt of the email and responded that he would review the information. (*Id.*). While Plaintiff contends that Davis did not ask Stevens to investigate his complaints, Stevens testified that she did not recall whether Davis asked her to conduct an investigation based on the email. (*Id.*). Plaintiff emailed Davis again in July 2018, and claimed that Mackowski was using the legal system to bully and harass him. (Dkt. 73 at ¶ 29). Specifically, Plaintiff relayed that Mackowski caused the Waukegan Police Department to perform a wellness check on Plaintiff's son while he was staying at Plaintiff's house. (Dkt. 91 at ¶ 73). Plaintiff contends Mackowski used her Circuit Court badge to initiate the wellness check; but Davis testified that, upon reading the entire police report, he determined that Mackowski showed the police her badge only after they expressed concerns about her safety. (*Id.* at ¶¶ 74-75). Davis concluded that Plaintiff's claims in the July 2018 email related to a personal matter that did not involve the Circuit Court and should be handled through their ongoing litigation. (Dkt. 73 at ¶ 29).

In September 2018, Plaintiff received his written annual performance appraisal, which indicated that, overall, Plaintiff "significantly exceeds job requirements" and rated him 4.3 out of 5. (Dkt. 91 at ¶¶ 56-57). The appraisal stated that "[a]s in the past, [Plaintiff] continues to make

significant contributions to the organization through his outstanding performance." (*Id.* at ¶ 56). Davis was aware of Plaintiff's 2018 performance appraisal. (*Id.* at ¶ 57).

On November 1, 2018, Mackowski reported to Stevens and Gray, her supervisor, that Plaintiff harassed and disparaged Mackowski while speaking to two adult probation officers—Josh Hetland (male) and Jamie Oliphant (female). (Dkt. 73 at ¶¶ 10, 30; Dkt. 91 at ¶ 59). Davis directed Stevens to investigate this report. (Dkt. 73 at ¶ 31, Dkt. 91 at ¶ 80).

In response, Stevens separately interviewed Hetland and Oliphant and drafted a memorandum summarizing these interviews which she provided to Davis on November 2, 2018. (Dkt. 73 at ¶¶ 31-32). Hetland stated that he and Plaintiff were former roommates and, at an all-staff training day on September 28, 2018, Plaintiff talked to Hetland about his ongoing child custody case and Mackowski's "controlling behavior." (*Id.* at ¶ 33). According to Stevens, Hetland said this was all Plaintiff had talked about for the past ten years. (*Id.*). Oliphant told Stevens that at a work conference on October 24, 2018, Plaintiff appeared intoxicated, and Oliphant refused to talk to him about his "baby drama." (*Id.* at ¶ 34). Oliphant further reported that Plaintiff made inappropriate comments to several Cook County officers and asked one woman specifically if she was "calling [him] a cock sucker." (*Id.*).

Stevens did not contact anyone who had attended the training or conference beyond Hetland and Oliphant to corroborate the information she had received. (Dkt. 91 at ¶ 81). No one contacted Plaintiff to ask for his side of the story, and Stevens confirmed that she did not speak to Plaintiff about Mackowski's complaint or Hetland or Oliphant's statements. (*Id.* at ¶¶ 84-85). Defendant Ukena testified that while he could not think of a legitimate reason why someone investigating employee misconduct would not meet with the accused employee, he imagined there

5

were times when that could have happened. (*Id.* at ¶ 67). Plaintiff denies that he engaged in the conduct of which he was accused. (*Id.* at ¶¶ 87-88).

Following Stevens' interviews with Hetland and Oliphant, Davis met with Ukena. (Dkt. 73 at ¶ 37). As Chief Judge, all employees of the Circuit Court worked for Ukena. (Dkt. 91 at ¶ 58). While Davis recommended that Plaintiff be terminated, Ukena felt demotion was appropriate; thus, the paperwork for Plaintiff's demotion was finalized that same day. (*Id.* at ¶ 95). On November 5, 2018, Plaintiff was demoted from his salaried position as unit manager to an hourly position of principal juvenile counselor and suspended without pay for five days. (Dkt. 73 at ¶ 38). Defendants contend that Plaintiff was demoted and suspended because he violated the Circuit Court's Rules of Conduct and Ethics Policy and, because of his demotion, he was only eligible for and received a 1.75% pay increase rather than a 2.85% merit pay increase. (*Id.* at ¶¶ 38, 40).

In 2019, Mackowski sent an email to Ukena with disparaging remarks about Plaintiff. (Dkt. 91 at ¶ 110). She was subsequently issued a written reprimand. (*Id.*).

### B. Procedural History

On March 23, 2020, Plaintiff filed a three-count complaint against Davis, James Edwards, Ukena, and Lake County. (Dkt. 1). In August 2020, all Defendants moved to dismiss Plaintiff's complaint. (Dkts. 18-19). On February 10, 2021, Judge Shah[3] granted Lake County's motion, and granted individual Defendants Davis, Edwards, and Ukena's motion in part. (Dkt. 32). As to the individual Defendants, Judge Shah: (1) dismissed Count I (First Amendment retaliation) without prejudice for failure to state a claim, (2) dismissed Count III (substantive due process under the Fourteenth Amendment) with prejudice, (3) dismissed Count II (sex discrimination under the

---

[3] This case was originally assigned to Judge Manish Shah but was reassigned to then-District Judge Nancy Maldonado on October 3, 2022. (Dkt. 65). When Judge Maldonado was elevated to a seat on the Seventh Circuit Court of Appeals, this case was reassigned to Judge Hunt on July 10, 2024. (Dkt. 96).

6

Equal Protection clause of the Fourteenth Amendment) without prejudice as to Defendant Edwards, and (4) dismissed with prejudice all claims against Defendant Ukena in his official capacity. (*Id.*). The sole claim in Count II of sex discrimination against Davis and Ukena in their individual capacities proceeded. Currently before the Court is Defendants' motion for summary judgment, which is fully briefed and ripe for ruling.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *id.* at 324, and support that position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. All "justifiable" inferences are drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *see also Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence.").

Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citation omitted).

## DISCUSSION

Plaintiff contends that Defendants violated his Fourteenth Amendment right to equal protection under the law because they demoted and suspended him based on his sex. Allegations of sex discrimination under the equal protection clause are generally analyzed using the same standards for Title VII claims. *Trautvetter v. Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990). *See also Jackson* v. *Ill. Dep't of Commerce & Econ. Opportunity*, No. 21-2268, 2022 WL 3009598, at *3 (7th Cir. 2022). However, one important distinction is that "intent to discriminate must be shown under equal protection while Title VII requires no such showing." *Trautvetter*, 916 F.2d at 1149. This means that to survive summary judgment, Plaintiff must establish the elements of a sex discrimination claim *and* that any such discrimination was intentional.

Plaintiff may offer either direct or indirect evidence of discrimination. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). Here, the parties discuss indirect evidence only, which traditionally involves the *McDonnell Douglas* burden shifting test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Even so, the Seventh Circuit has made clear that parties need not rely on any specific test to prove a case of discrimination. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016). Rather, plaintiffs may defeat summary judgment by showing that a reasonable jury could infer discriminatory animus after evaluating the evidence as a whole. *Id.* at 766. Therefore, the Court addresses both frameworks. And now having considered the parties' arguments, the record, and the relevant case law, the Court concludes that Defendants are entitled to summary judgment under either standard.

I. *McDonnell Douglas*

Plaintiff may establish a *prima facie* case of discrimination by showing that "(1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from the employer." *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). If he succeeds, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the employer is successful, the burden then shifts back to the plaintiff to demonstrate that the proffered reason is pretextual. *Igasaki*, 988 F.3d at 957 (quoting *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020)).

Because Plaintiff is a member of a majority rather than a minority group, a modified *McDonnell Douglas* test applies. *Mills*, 171 F.3d at 454-57 (modification necessary because the plaintiff was a white male who "clearly [did] not satisfy prong one" and "if strictly applied, the [*McDonnell Douglas*] prima facie test would eliminate all reverse discrimination suits"). *See also Phelan v. City of Chi.*, 347 F.3d 679, 684 (7th Cir. 2003) ("Recently, the Seventh Circuit modified the test to apply to situations where members of majority groups believe they were subjected to employment discrimination."). In these cases, a plaintiff must show "background circumstances which give rise to an inference of discrimination." *Mills*, 171 F.3d at 457. *See also Phelan*, 347 F.3d at 684 (citations omitted) (plaintiff in reverse discrimination case required to show "'background circumstances' that demonstrate that a particular employer has 'reason or inclination to discriminate invidiously against whites' or evidence that 'there is something "fishy" about the facts at hand.'").

Defendants argue that Plaintiff fails to meet the first prong of the modified *McDonnell Douglas* test and, in fact, does not even acknowledge it. (Dkt. 57 at 5-7; Dkt. 90 at 1-4).[4] Beyond this, Defendants contend that Plaintiff was not meeting the Circuit Court's legitimate expectations and cannot identify a similarly situated employee outside of his protected class who was treated more favorably. (Dkt. 57 at 7-10).[5] Finally, Defendants assert that even if Plaintiff meets his prima facie burden, they had a legitimate, nondiscriminatory reason for demoting and suspending Plaintiff, which he cannot show was pretextual. (*Id.* at 10-12).

### A. **Prima Facie Case**

For starters, Plaintiff does not discuss the modified first prong. (Dkt. 90 at 2). He merely says that he "is a member of a protected class based on his sex." (Dkt. 72 at 7). Nothing about that general statement identifies circumstances that might give rise to an inference that Davis or Ukena had reason to discriminate against men in the workplace. Nor has Plaintiff pointed to anything "fishy" about the basis for the discipline imposed. In sum, the Court agrees with Defendants that "the record is devoid of any evidence that Defendants had reason or inclination to discriminate against males." (Dkt. 57 at 6). Indeed, Plaintiff acknowledged the same and further conceded that he has not heard from anyone or seen any documents to suggest that either defendant harbors animus towards male employees. (Dkt. 73 at ¶¶ 45-48). As a result, Plaintiff fails at the first step of the analysis.

Even if he satisfied that prong, Plaintiff also falls short on identifying a similarly situated employee. In determining if employees are similarly situated, the Court need not find that the

---

[4] For brevity, the Cout refers to Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment as "Dkt. 57," Plaintiff's Memorandum Opposing Summary Judgment as "Dkt.72," and Defendants' Reply in Support of Their Motion for Summary Judgment as "Dkt. 90."

[5] Defendants do not dispute that Plaintiff was subjected to an adverse employment action. For simplicity, the Court assumes *arguendo* that Plaintiff was meeting his employer's legitimate expectations.

employees are identical. *Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008). Rather, "[t]he similarly situated analysis requires a flexible, common-sense inquiry that asks 'whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis.'" *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). A plaintiff should demonstrate that he and the similarly situated employee reported to the same supervisor, were held to the same standards, and engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates*, 513 F.3d at 690. "[W]hen uneven discipline is the basis for a claim of discrimination, the most[] relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor." *Rodgers*, 657 F.3d at 518.

Plaintiff argues that Mackowski is a comparator who was treated better since "Defendants disciplined Plaintiff but not [her]." (Dkt. 72 at 12; Dkt. 73 at ¶ 49). And he maintains that they are similarly situated because they reported to and were disciplined by the same supervisors, were governed by the same rules of conduct, and engaged in similar misconduct. (*Id.* at 15).

The Court agrees that Plaintiff and Mackowski were held to the same standards as Circuit Court employees governed by the Rules of Conduct and Ethics Policy. But that is where the relevant similarities end. Plaintiff was a unit manager in the Juvenile Probation Division while Mackowski was a principal probation officer in the Adult Probation Division. While all Circuit Court employees were under the general supervision of Chief Judge Ukena, the Juvenile and Adult Probation divisions had separate reporting structures. In other words, Plaintiff and Mackowski directly reported to entirely different supervisors. Most importantly, the record does not reflect similar misconduct by Plaintiff and Mackowski. True, both had been warned in the past about

11

keeping their personal disputes out of the work environment and misusing their positions by wearing Circuit Court-issued badges to their child custody court hearings. That said, Plaintiff was demoted from a managerial position and suspended for alleged improprieties at work-related trainings and conferences in 2018, which Defendants found violated Circuit Court policies. The record does not contain reports that Mackowski had spoken disparagingly about Plaintiff or inappropriately to others *in the same manner* as Plaintiff was accused of doing.

Plaintiff points to the email Mackowski sent to Ukena in 2019 demeaning Plaintiff, which led to a written reprimand. (Dkt. 72 at 12). However, emailing a supervisor with complaints about Plaintiff, as Mackowski did, while inappropriate, is far different from criticizing Mackowski to other Adult Probation Division employees who are her co-workers, as Plaintiff allegedly did. In fact, Plaintiff conveniently ignores that he himself had sent emails to his superiors disparaging Mackowski and, as far as the Court can tell, was not disciplined for his actions.

Plaintiff further cites Mackowski's use of her badge at the Waukegan Police Department and Defendants' failure to investigate that as evidence of more favorable treatment. (Dkt. 72 at 12). But Davis explained the police report indicated that Mackowski displayed her badge in response to questions from the Waukegan Police about her wellbeing in light of the volatile situation with Plaintiff. As such, nothing here supports a finding of impropriety by Mackowski for that incident which would have warranted discipline.

To be clear, both Plaintiff and Mackowski failed to consistently display the level of professionalism expected from Circuit Court employees. Their personal drama spilled over into the workplace and created unnecessary challenges for supervisors and other employees. Aside from that unfortunate similarity, neither they nor their actions are comparable for purposes of proving better treatment of a female employee.

Because Plaintiff cannot meet his prima facie burden, his sex discrimination claim fails as a matter of law. But for the sake of completeness, the Court will address the remaining elements.

### B. Legitimate, Nondiscriminatory Explanation

Defendants contend that they have offered a legitimate, nondiscriminatory explanation for Plaintiff's suspension and demotion. (Dkt. 57 at 10-12). Specifically, Defendants maintain that their actions were consistent with previous warnings to Plaintiff, dating back to 2010, that continued violations of Circuit Court policy, particularly concerning the child custody litigation with Mackowski, could result in adverse consequences, up to and including termination. (*Id.* at 11). Here, the record reflects that Defendants received a complaint of misconduct by Plaintiff in the workplace, investigated, and determined a course of disciplinary action. Thus, Defendants have met their burden.

### C. Pretext

To establish pretext, Plaintiff must show that Defendants' action is more than just faulty reasoning or mistaken judgment, but a lie. *Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023) (citations and quotations omitted). Plaintiff contends Defendants did not honestly believe the reason they gave for their decision or that Plaintiff's alleged conduct justified the imposed discipline. (Dkt. 72 at 7-11). He argues a jury might not believe Defendants because there is conflicting evidence about whether Plaintiff admitted to engaging in the inappropriate conduct, Plaintiff has a history of work promotions and positive evaluations, there are documented instances in which Plaintiff discussed his situation with Mackowski with Davis and other

13

superiors, and Defendants' investigation into Plaintiff's conduct was flawed. (*Id.* at 7-10). Plaintiff's arguments all miss the mark.

As the Seventh Circuit aptly explained, "[w]e have said time and again (in more than one hundred reported opinions, by our count) that we are not a super-personnel department that will substitute our criteria for an employer's for hiring, promoting, or disciplining employees." *Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 933 (7th Cir. 2020). In other words, the fact that Plaintiff believes he was a model employee who did nothing wrong and Defendants should have investigated the accusations more thoroughly is irrelevant. Defendants chose to credit the statements of two employees who corroborated Mackowski's statements over Plaintiff's denials. Given the vitriolic relationship between Plaintiff and Mackowski since 2010, it likely came as no surprise to Defendants that either of them was still complaining about the other in 2018. Even so, the investigation also uncovered concerns about other workplace misconduct by Plaintiff that was completely unrelated to Mackowski. While it may have been prudent to interview Plaintiff or additional employees about his actions at the workplace training and conference, there is simply no evidence to suggest that Defendants' failure to do so was because of Plaintiff's sex. Plaintiff therefore cannot show pretext.

## II. *Ortiz*

When analyzing a claim of discrimination under *Ortiz*, "[t]he determinative question . . . is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's . . . sex . . . or other proscribed factor caused the discharge or other adverse employment action.'" *Igasaki*,

988 F.3d at 958 (citing *Ortiz*, 834 F.3d at 765). Courts must ask whether the "totality of the evidence shows discrimination." *Igasaki*, 988 F.3d at 958.

Plaintiff contends that "jurors could find [Defendants] discriminated against Plaintiff based on outdated gender stereotypes favoring mothers in custody cases and portraying fathers as being guilty of neglect and deserving of scorn and punishment" (Dkt. 72 at 2). As the Court has already explained, though, when viewed as a whole, the evidence does not suggest that Plaintiff was disciplined because he is male. Rather, a reasonable jury could infer that Plaintiff was demoted from *unit manager* in the Juvenile Probation Division and suspended without pay after numerous warnings about his unprofessional conduct with respect to Mackowski and failure to abide by Circuit Court policies. In sum, Defendants were entitled to expect that a managerial employee in an important role overseeing at-risk youth would not continue to allow his own personal situation to negatively impact work for himself and for others. Moreover, Plaintiff has not demonstrated any intent to discriminate for purposes of his claim under the equal protection clause of the Fourteenth Amendment. Thus, no triable issues of fact exist on the sex discrimination claim.

## CONCLUSION

For all the foregoing reasons, summary judgment is entered in favor of Defendants Danny Davis and Jay Ukena, and against Plaintiff Adam Kohl.

**DATED**: December 27, 2024  **ENTERED**:

LaShonda A. Hunt
United States District Judge